618 A.2d 1047

**COMMONWEALTH of Pennsylvania**

v.

**Scott BUCK, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 2, 1992.

Filed Jan. 12, 1993.

John McLaughlin, Danville, Asst. Public Defender, for appellant.

Robert W. Buehner, Jr., Dist. Atty., Danville, for Com.

Before ROWLEY, President Judge, and HUDOCK and CERCONE, JJ.

CERCONE, Judge:

This is a direct appeal from a judgment of sentence.[1] We affirm.

Appellant, Scott Buck, was found guilty of a summary offense under the Pennsylvania Game and Wildlife Code, 34 Pa.C.S.A. § 102 *et seq.* Specifically, appellant was convicted of transporting a deer carcass to which a properly completed "game kill tag" had not been attached as required by section 2323 of the Game and Wildlife Code.[2] Appellant took an appeal to the Court of Common Pleas of Montour County which was tried *de novo* before the Honorable Scott W. Naus. On March 25, 1992, appellant was adjudicated guilty as charged. Appellant's timely filed post-verdict motions were subsequently denied and on May 12, 1992, Judge Naus sentenced Mr. Buck to pay a fine of one hundred dollars ($100.00) plus the costs of prosecution. The instant timely appeal followed.[3]

1.  Appellant incorrectly captioned the case as an appeal from the trial court's order of May 12, 1992 which denied post-verdict relief. Appeal lies from the judgment of sentence. Pa.R.A.P., Rule 301, 42 Pa.C.S.A. *See generally Commonwealth v. Dorman,* 272 Pa.Super. 149, 414 A.2d 713 (1979) (discussing timing of appeal from judgment of sentence). We note, however, that the final judgment of sentence in this case was actually imposed by the same order which denied appellant's post-verdict motions.

2.  Section 2323 provides that each person who kills any big game shall attach a tag to the carcass immediately upon effecting a kill and before removing the game from the location of the killing. 34 Pa.C.S.A. § 2323(a) (tags issued with licenses).

3.  We are aware that the Pennsylvania Commonwealth Court possesses appellate jurisdiction over criminal proceedings stemming from violations of regulatory statutes administered by Commonwealth agencies and has in the past heard appeals from criminal convictions under the Game and Wildlife Code. *See, e.g., Dickerson v. Commonwealth,* 138

Appellant has presented one issue for our consideration: whether the trial court erred by failing to dismiss the Commonwealth's prosecution as *de minimis* under section 312 of the Pennsylvania Crimes Code. This statute contains the following relevant provisions:

### De minimis infractions

(a) General rule.—The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

(1) was within a customary license or tolerance, neither expressly negatived by the person. whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa.C.S.A. § 312(a).

We note that section 312 of the Crimes Code, set forth in Title 18 of the Pennsylvania Statutes, does not on its face apply to an infraction defined by the General Assembly under a different statutory title. *See, e.g., Mitchell v. Liquor Control Board,* 82 Pa.Commw. 344, 476 A.2d 479 (1984) (Crimes Code section concerning dismissal of *de minimis* criminal infractions is inapplicable to Liquor Code citation proceedings). The issue of whether section 312 of Title 18 properly applies to a violation of Title 34 has not been directly addressed by appellant. Our research into this question has disclosed no statute or case precedent which is directly on point. Unfortunately, the Commonwealth has neglected to file

Pa.Commw. 141, 587 A.2d 379 (1991). However, appellee neither moved to transfer the instant action nor objected to our capacity to hear the appeal. Appellate jurisdiction therefore has vested in the Superior Court. Pa.R.A.P., Rule 741(a), 42 Pa.C.S.

a brief in this case and the trial judge has declined to write an opinion explaining the rationale underlying his decision. Therefore, as neither the Commonwealth nor the trial court has challenged appellant's assumption that section 312 properly applies to the instant matter, this court shall accept the contention *arguendo*.

The Superior Court has interpreted section 312 as having been enacted for situations in which there was no harm done to either a specific victim or to society as a whole. *Commonwealth v. Moses*, 350 Pa.Super. 231, 235, 504 A.2d 330, 332 (1986). "Therefore, it is incumbent upon the trial court not to dismiss criminal conduct that is injurious to the victim or to society." *Id.* Appellant contends that his conduct did not adversely affect either a specific human victim or society in general.

At trial, appellant testified that on the first day of the 1991 hunting season, he harvested a "trophy buck." He stated that he removed the "game kill tag" from his hunting license and completed it in accordance with the relevant provisions of the Game and Wildlife Code. Upon his arrival at the deer processing center,[4] an officer of the Pennsylvania Game Commission determined that appellant had not attached a game kill tag to the buck as required by law. Appellant testified that he had the properly completed game kill tag in his possession, but had not attached it to the deer's antlers because he had no string of an appropriate diameter and he did not want to damage the animal's head by punching a hole in the ear through which to affix the tag. Appellant also explained that he had originally placed the tag deep within the deer's ear and tied the ear shut with heavy rope. Mr. Buck stated that he removed the tag from the ear because he feared it would blow away and he then would be left with a deer and no game kill tag. Appellant noted that before taking the deer to the processing center, he had stopped at his house to show the animal to his brother. He also conceded that he was an

4. The "deer processing center" in question was identified by the investigating Pennsylvania Game Commission officer as "George's Butcher Shop." N.T. 3/25/92 at 4.

experienced hunter and was aware of the requirement that a game kill tag must actually be attached to a harvested animal. *See* N.T. 3/25/92 at 19–32.

Appellant argues that his conduct in this matter, while it constituted a literal infraction of section 2323 of the Game and Wildlife Code, did not really violate the spirit of the law. According to appellant, the purpose of requiring the use of game kill tags is to limit the number of animals killed by one individual so that many hunters may enjoy the pleasures of the chase and also to facilitate the Commonwealth's attempt to monitor the number of animals harvested in a given season. It is appellant's belief that he was substantially in compliance with the purpose of section 2323 because he had no intention of illegally taking a second buck, and had filled out the game kill tag so as to properly report his kill at the game processing center. Appellant hypothesizes that the only reason he was charged at all is because he was "discourteous" to the Game Commission officers.

Our review of the trial transcript discloses that the Game Commission officer who testified placed a less innocent construction upon appellant's behavior. Deputy Game Protector William Levan stated that when he initially attempted to inspect the animal tied to appellant's hood, appellant drove away as soon as he noticed Mr. Levan looking at the untagged deer. *Id.* at 5. Mr. Levan further testified that appellant "almost [ran] over me" in his attempt to escape. *Id.* When Mr. Levan caught up with appellant, he saw appellant "alight from the car and lay the tag on the deer." *Id.* At that time, appellant told Mr. Levan three different and contradictory stories as to why the carcass had been untagged. *Id.* at 4.

Wildlife Conservation Officer Peter Aiken substantially corroborated Deputy Game Protector Levan's testimony. *Id.* at 11–15. Additionally, Mr. Aiken noted that the Game Commission officers were travelling in a marked vehicle and were in uniform at the time they investigated appellant's untagged deer. *Id.* at 18. Mr. Aiken also explained that the purpose of attaching a game kill tag to an animal before moving it is both to identify the owner of the carcass and so that a single license

may not be used again during the same hunting season to kill multiple deer. *Id.* at 17.

Upon careful consideration of the entire transcript, we find that the trial judge was justified in refusing to dismiss the charges against appellant as *de minimis.* The testimony of the Game Commission officers fully supports the conclusion that appellant's behavior after harvesting his trophy buck was not consistent with that of a person who intended to comply with the provisions of the Game and Wildlife Code and only inadvertently infringed the letter of the law. Further, appellant's own testimony indicates that he knew he was required to attach a game kill tag to his deer. He stated that he stopped at his house prior to taking the animal to the processing center yet gave no reason for failing to obtain a means to attach the tag to the deer's antlers. Appellant has conceded that he "could have been more polite" to the Game Commission officers. *Id.* at 24. His only excuse for failing to cooperate with the officers is a belief that "their line of questioning possibly could have been a little different." *Id.* Under the circumstances presented here, we find no basis upon which to overturn the trial court's verdict.

Judgment of sentence affirmed.